**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

GEORGE GWYNN,
              Appellant,

      v.

DEPARTMENT OF THE TREASURY,
              Agency.

DOCKET NUMBER
DC-0432-16-0865-I-1

DATE: February 28, 2023

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

George Gwynn, Alexandria, Virginia, pro se.

Byron D. Smalley, Esquire, and Davina Minnix, Washington, D.C., for the
    agency.

**BEFORE**

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member
Tristan L. Leavitt, Member

**FINAL ORDER**

¶1      The appellant has filed a petition for review of the initial decision, which
affirmed his reduction in grade and pay under 5 U.S.C. chapter 43.  Generally, we
grant petitions such as this one only in the following circumstances:  the initial

---

[1] A nonprecedential order is one that the Board has determined does not add
significantly to the body of MSPB case law.  Parties may cite nonprecedential orders,
but such orders have no precedential value; the Board and administrative judges are not
required to follow or distinguish them in any future decisions.  In contrast, a
precedential decision issued as an Opinion and Order has been identified by the Board
as significantly contributing to the Board's case law.  *See* 5 C.F.R. § 1201.117(c).

decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. Except as expressly MODIFIED regarding the agency's burden of proof and the appellant's affirmative defense of retaliation for equal employment opportunity (EEO) activity, we AFFIRM the initial decision.

## BACKGROUND

¶2     The appellant was an IR-0501-5 Supervisory Individual Taxpayer Specialist (ITS) for the agency, a position that he held from about 2006. Initial Appeal File (IAF), Tab 1 at 1, Tab 7 at 15, Tab 41 at 67. In this position, the appellant was responsible for running the daily operations of Taxpayer Assistance Centers (TACs) in Fredericksburg and Bailey's Crossroads (in Fairfax County), Virginia. IAF, Tab 9 at 54, Tab 40 at 4, Tab 41 at 109. He worked under a performance plan with six critical elements. IAF, Tab 40 at 95-98. His performance year ran from October 1 through September 30. *Id*. at 95.

¶3     In October 2013, a new Territory Manager became the appellant's first-level supervisor. *Id*. at 58. Shortly thereafter, beginning in November 2013, the appellant was hospitalized and took approximately 2 months of medical leave. IAF, Tab 1 at 28, Tab 40 at 66-67. By all accounts, the appellant's relationship with the Territory Manager soon became rocky. On May 20, 2014, the Territory

Manager issued the appellant a memorandum of counseling, criticizing the way he was managing his subordinates and recommending that he either change his management practices or return to a nonsupervisory position. IAF, Tab 40 at 81. The appellant filed an informal EEO complaint in June 2014, seeking rescission of the memorandum. IAF, Tab 7 at 29-30. The complaint went to mediation, but when no settlement resulted, the appellant elected not to pursue it any further. *Id*. at 29. The Territory Manager continued to criticize the appellant's performance both formally and informally throughout the year, including issuing seven additional memoranda of counseling; the appellant variously attempted to address or rebut the Territory Manager's concerns. IAF, Tab 7 at 29-53, Tab 30 at 387-97.

¶4        In the spring of 2015, the Territory Manager issued the appellant a poor midyear progress review and placed him on a 60-day performance improvement plan (PIP). IAF, Tab 9 at 24-31, 52-58. The appellant filed another EEO complaint challenging the Territory Manager's actions, and alleging discrimination based on race, color, and sex, and retaliation for his prior informal EEO complaint. IAF, Tab 30 at 369. In the April 30, 2015 PIP notice, the Territory Manager set forth the appellant's performance standards and explained, with examples, how he failed to meet performance expectations during the first half of the 2014-2015 performance year in the following three critical elements: (1) Leadership and Human Capital Management, (2) Customer Service and Collaboration, and (3) Program Management. *Id*. at 52-56. She informed the appellant that he would have 60 days to bring his performance to a minimally successful level, and that his failure to do so could result in an adverse employment action, including a reduction in grade. *Id*. at 58. The Territory Manager listed numerous improvements that the appellant needed to make during the PIP period in order to demonstrate acceptable performance, as well as nine specific "action items," i.e., discrete tasks that the appellant needed to accomplish during the PIP period. *Id*. at 56-58. Some of these action items were

to be implemented immediately, with the others to be accomplished by May 15 or 30, 2015, as specified. *Id*.

¶5     However, on June 4, 2015, before the end of the PIP period, the appellant underwent emergency surgery and went on extended medical leave until November 2, 2015. IAF, Tab 41 at 116. Upon his return, the appellant presented the Territory Manager with a letter from his doctor, stating that he was cleared for duty but would need frequent bathroom breaks, standing breaks, and an opportunity to telecommute, especially after pain-related medical appointments. IAF, Tab 40 at 70, Tab 41 at 35. The Territory Manager informed the appellant that the standing and bathroom breaks were no problem, but in light of his performance issues, she denied his request to telecommute. IAF, Tab 40 at 70-71. Instead, she informed the appellant that she would allow him to take leave whenever necessary for his medical appointments. *Id*. at 71. After taking some time to transition back to work, the appellant resumed the full range of his regular supervisory duties on November 30, 2015. *Id*. at 70.

¶6     Because the appellant started his leave about half way into his 60-day PIP, the agency afforded him an additional 30 days, from December 1 through 30, 2015, to demonstrate acceptable performance. IAF, Tab 9 at 32, Tab 30 at 364, Tab 40 at 60, Tab 41 at 111. Action items previously due on May 15, 2015, were now due on December 15, 2015, and action items previously due on May 30, 2015, were now due on December 30, 2015. IAF, Tab 9 at 32. At the close of the PIP period, the Territory Manager determined that the appellant had successfully completed only seven of the 17 PIP tasks that she had assigned him. IAF, Tab 30 at 364-67, Tab 40 at 61-69. She therefore recommended that the appellant be removed from his position. IAF, Tab 30 at 367.

¶7     On March 25, 2016, the appellant's second-line supervisor proposed his reduction in grade to GS-11 Senior Taxpayer Advisory Specialist based on inadequate performance in each of the three critical elements underlying the PIP. IAF, Tab 8 at 159-67. The appellant filed a third EEO complaint that same day.

IAF, Tab 41 at 129. After the appellant replied to the proposal letter, his third-line supervisor issued a decision on August 19, 2016, sustaining all the charges and specifications and effecting the proposed reduction in grade. IAF, Tab 7 at 22-24. On September 4, 2016, the appellant was reduced in grade and pay from IR-05 Supervisory Individual Tax Advisory Specialist, with an adjusted salary of $94,453, to GS-11 Individual Taxpayer Advisory Specialist, with an adjusted salary of $77,579. *Id*. at 15.

¶8        The appellant filed a Board appeal and waived his right to a hearing. IAF, Tabs 1, 38. He challenged the merits of the agency's action and raised several affirmative defenses, including disability discrimination and retaliation for EEO activity. IAF, Tab 32 at 3-4. After the close of the record, the administrative judge issued an initial decision, affirming the agency's action and finding that the appellant failed to prove his affirmative defenses. IAF, Tab 42, Initial Decision (ID). The appellant has filed a petition for review, again contesting the merits of the agency's action, and disputing the administrative judge's findings on his disability discrimination and EEO retaliation claims.[2] Petition for Review (PFR) File, Tab 4. The agency has filed a response to the petition for review, PFR File, Tab 6, and the appellant has filed a reply to the agency's response,[3] PFR File, Tab 7.

---

[2] The initial decision reflects that the appellant also raised affirmative defenses of harmful procedural error or violation of due process and discrimination based on race, color, and sex. ID at 21-25. Although the record shows that the appellant raised a harmful procedural error or due process defense, IAF, Tab 1 at 8, Tab 29 at 6-7, we were unable to find any clear indication that he attempted to raise a discrimination claim under Title VII. In any event, the administrative judge found that the appellant did not prove any of these claims, and the appellant does not contest the administrative judge's findings on review. ID at 21-25; *see* 5 C.F.R. § 1201.115 ("The Board normally will consider only issues raised in a timely filed petition or cross petition for review."). Therefore, we will not address these claims further.

[3] After the close of the record on review, the appellant submitted a motion for leave to file additional evidence in the form of "documents/evidence that refutes several of the agency's reasons for demoting the appellant." PFR File, Tab 9. The appellant explains

## ANALYSIS

The agency has proven its case by substantial evidence.

¶9    Before removing an employee for unacceptable performance under 5 U.S.C. chapter 43, an agency must satisfy certain procedural requirements.  *See* 5 C.F.R. §§ 432.104-432.105.  Consequently, the agency's case in chief consists of numerous elements, each of which it must prove by substantial evidence.  *See* 5 C.F.R. § 1201.56(b)(1)(i).  The Board's case law has not been particularly consistent in describing these elements of proof, and the Board has rendered various formulations of them over the years.  *Compare, e.g.*, *White v. Department of Veterans Affairs*, 120 M.S.P.R. 405, ¶ 5 (2013), *with Muff v. Department of Commerce*, 117 M.S.P.R. 291, ¶ 5 (2012), *and Gonzalez v. Department of Transportation*, 109 M.S.P.R. 250, ¶ 6 (2008), *and Belcher v. Department of the Air Force*, 82 M.S.P.R. 230, ¶ 4 (1999), *and Kadlec v. Department of the Army*, 49 M.S.P.R. 534, 539 (1991).  The administrative judge in this case used yet another formulation of the agency's burden as set forth in *Brosseau v. Department of Agriculture*, 97 M.S.P.R. 637, ¶ 20 (2003), according to which the agency must show that (1) the Office of Personnel Management (OPM) has approved the agency's performance appraisal system; (2) the appellant's performance standards were communicated to him; (3) the appellant failed to meet one or more critical elements of his position; and (4) he was given a reasonable opportunity to improve his performance.  ID at 2.

---

that he was unable to submit this evidence previously due to medical problems he was experiencing, the turmoil associated with relocating for his new job, and the withdrawal of his representative shortly before the scheduled hearing.  *Id.*  We find that the appellant has not described this evidence with sufficient specificity to show that it might be material to the outcome of the appeal.  Nor has the appellant shown that these circumstances persisted 7 months after the close of the record on review, which was when he submitted his motion for leave to file.  *Cf. Blair v. Office of Personnel Management*, 89 M.S.P.R. 113, ¶ 12 (2001) (holding that, to show good cause for an untimely filing, a party must address the entire period of the delay), *aff'd*, 31 F. App'x 646 (Fed. Cir. 2002).  For these reasons, we deny the appellant's motion.

¶10     After the initial decision in this appeal was issued, the Board issued an Opinion and Order in *Lee v. Department of Veterans Affairs*, 2022 MSPB 11, setting forth the elements of the agency's case in light of recent Federal Circuit precedent in *Santos v. National Aeronautics and Space Administration*, 990 F.3d 1355 (Fed. Cir. 2021).   The Board held that, in an appeal of a chapter 43 performance-based action, an agency must show by substantial evidence that (1) OPM approved its performance appraisal system and any significant changes thereto; (2) the agency communicated to the appellant the performance standards and critical elements of his position; (3) the appellant's performance standards are valid under 5 U.S.C. § 4302(c)(1); (4) the appellant's performance during the appraisal period was unacceptable in one or more critical elements; (5) the agency warned the appellant of the inadequacies in his performance during the appraisal period and gave him an adequate opportunity to demonstrate acceptable performance; and (6) after an adequate improvement period, the appellant's performance remained unacceptable in at least one critical element.   *Lee*, 2022 MSPB 11, ¶ 15.   This standard applies to all pending cases, regardless of when the events at issue took place.   *Id.*, ¶ 16.   We will address each of these elements in turn.

¶11     In his initial decision, the administrative judge found that the agency submitted substantial evidence that OPM had approved its performance appraisal system, and that the matter was not in dispute.  ID at 4.  The appellant does not challenge the administrative judge's finding on review, and for the reasons stated in the initial decision, we agree that the agency proved the first element of its case by substantial evidence.

¶12     The administrative judge also found that the agency proved by substantial evidence that it communicated to the appellant the performance standards and critical elements of his position.  ID at 4-6.  He found that the agency provided the appellant his performance standards and critical elements in writing at the beginning of the performance year in December 2014, at his midyear progress

review in April 2015, and at the beginning of the PIP period later that month. ID at 5-6. He further found that the Territory Manager discussed these standards and elements with the appellant on each of these occasions. *Id*. The appellant does not dispute the administrative judge's findings on review, and for the reasons explained in the initial decision, we agree with the administrative judge that the agency proved the second element of its case by substantial evidence.

¶13        Regarding the third element of the agency's case, the *Brosseau* standard that the administrative judge cited does not state that the agency is required to prove that its performance standards are valid. ID at 2. Therefore, the standard as stated in *Brosseau* is incomplete. Nevertheless, citing relevant precedent, the administrative judge explicitly stated in his initial decision that the agency was required to establish performance standards that are valid, i.e., standards that are reasonable, realistic, attainable, and clearly stated in writing, which inform the employee of what is necessary to achieve acceptable performance, and which are sufficiently specific to provide a firm benchmark toward which the employee must aim his performance. ID at 4-5; *see Towne v. Department of the Air Force*, 120 M.S.P.R. 239, ¶ 21 (2013); *Greer v. Department of the Army*, 79 M.S.P.R. 477, 483 (1998). Applying this standard to the facts of the case, the administrative judge found that the agency proved by substantial evidence that its performance standards were valid. ID at 5, 26. The appellant does not contest the administrative judge's finding on review, and we discern no basis to disturb it.

¶14        Regarding the fourth element of the agency's case, the administrative judge found that the agency proved by substantial evidence that the appellant's performance prior to the April 30, 2015 PIP was unacceptable, and that the agency notified him of this fact. ID at 6-7. In support of this finding, the administrative judge cited to several performance counseling memoranda that the agency issued to the appellant between January and April 2015, as well as the appellant's unfavorable April 23, 2015 midyear progress review and the PIP

notice itself, both of which contained numerous examples of instances in which the appellant demonstrated unacceptable performance. ID at 6-7; IAF, Tab 9 at 24-29, 52-58, 68-69, 85-88. On petition for review, the appellant disputes each of the 13 examples of allegedly unacceptable performance that the Territory Manager used to justify the PIP, as well as the various counseling memoranda leading up to it. PFR File, Tab 4 at 5-14, 17-18, 20. We will review each of these examples in turn.

¶15    Under example 1, the Territory Manager stated that, every month, the appellant was required to complete reviews for all nine of his subordinates, but in October 2014, the appellant completed only seven. IAF, Tab 9 at 55. On review, the appellant argues that he was unaware that he was required to complete reviews for each and every one of his subordinates each month because the applicable agency manual only states that this "generally" is the case. PFR File, Tab 4 at 6. However, the term "generally" implies that the rule that each subordinate must be reviewed every month would apply absent an exception, and the appellant has not identified the presence of any circumstances that would have warranted an exception for October 2014. The appellant also argues that he exceeded the one review per month requirement in the months following October 2014. *Id*. However, even if this is true, this does not make his performance in this Leadership and Human Capital Management task acceptable for the month of October.

¶16    Under example 2, the Territory Manager alleged that, in December 2014, the appellant completed only three out of the seven reviews required for that month. IAF, Tab 9 at 55. On petition for review, the appellant disputes this allegation, arguing that he completed all seven of the required reviews. PFR File, Tab 4 at 6. He states that he informed the Territory Manager of this fact on May 15, 2015, in rebuttal to the PIP notice, but the Territory Manager ignored him. *Id*. We have considered the appellant's argument, but we are not persuaded. The specific and detailed information in the PIP notice, as

corroborated by the Territory Manager's comments in the appellant's midyear progress review, constitutes valid evidence that the appellant, in fact, did not complete all of the required reviews in December 2014.[4]  IAF, Tab 9 at 25, 55. There appears to be no documentary evidence of these reviews, such as receipt logs or copies of the reviews themselves, so the agency's evidence can only be weighed against the appellant's statement that he completed the reviews as required.  PFR File, Tab 4 at 6.  Under these circumstances, we find that the agency has presented substantial evidence that the appellant failed to complete all of the required reviews for December 2014.

¶17        Under example 3, the Territory Manager stated that the appellant was demonstrating unacceptable performance in the area of Customer Service and Collaboration, because neither the Fredericksburg nor the Bailey's Crossroads TACs were meeting the area goal of 5% customer satisfaction according to customer surveys.  IAF, Tab 9 at 55.  On petition for review, the appellant argues that customer satisfaction surveys cannot reasonably be used to evaluate his performance because he has no control over how many people fill them out, and the customers who do fill them out do not necessarily constitute a representative sample of customers as a whole.  PFR File, Tab 4 at 7.  He also argues that the Territory Manager failed to consider that understaffing at his location contributed to dissatisfaction by customers.  *Id.*  For the reasons that the appellant explains on review, we agree with him that the results of customer satisfaction surveys are not entirely within his control.  Nevertheless, we find that even if these survey results do not paint a complete picture of the appellant's performance in

---

[4] The Federal Circuit has held that specifications in a notice of proposed removal under chapter 43 that are corroborated by other evidence of record and are sufficiently detailed to be disputed by the appellant may be considered as forming part of the agency's valid proof.  *DePauw v. U.S. International Trade Commission*, 782 F.2d 1564, 1566-67 (Fed. Cir. 1986); *Delancy v. U.S. Postal Service*, 88 M.S.P.R. 129, ¶ 8 (2001). We find it appropriate to apply the same rule to specifications of inadequate performance contained in a PIP notice.

Customer Service and Collaboration, they still show the end results of the appellant's efforts in this area and are therefore probative of the matter. The appellant does not dispute the factual accuracy of the Territory Manager's allegations, which are corroborated by her comments in the appellant's midyear progress review. IAF, Tab 9 at 24, 55. Furthermore, even if some of the reasons for low customer satisfaction were attributable to understaffing, the Territory Manager explained that the appellant exacerbated the problem by having his subordinates specialize in specific tasks so that they were unable to fill in for coworkers who specialized in other tasks when those coworkers left the team or went on leave. *Id*. at 24, 26.

¶18    Under example 4, the Territory Manager stated that the appellant had demonstrated unacceptable performance in Customer Service and Collaboration during the first two quarters of fiscal year 2014, when waiting times at both the Fredericksburg and Bailey's Crossroads TACs exceeded the established threshold, with waiting times of more than 30 minutes for 49% of customers and 41% of customers respectively.[5] IAF, Tab 9 at 55. The appellant again attributes these wait times to understaffing, but as explained above, although understaffing likely contributed to these excessive wait times, substantial evidence shows that the appellant's management practices contributed to the problem as well. PFR File, Tab 4 at 7; IAF, Tab 9 at 24, 26.

¶19    Under example 5, the Territory Manager stated that, on the morning of February 2, 2015, she attempted to contact the appellant at the Bailey's Crossroads TAC but was unable to do so. Later, she got through to him at the Fredericksburg TAC, to which he had traveled without prior management or budget approval. IAF, Tab 9 at 55. According to the Territory Manager, this demonstrated a failure in Leadership and Human Capital Management. *Id*. On

---

[5] It appears that the standard is that no more than 30% of customers should be waiting more than 30 minutes for service. IAF, Tab 9 at 45.

petition for review, the appellant argues, among other things, that his practice was to work out of both TACs because the previous Territory Manager had encouraged him to do so and he was unaware, prior to March 2015, that he needed prior approval to work out of the Fredericksburg TAC. PFR File, Tab 4 at 8-9. Although the Territory Manager subsequently made clear to the appellant that he would need to obtain prior approval before traveling to, and working at, the Fredericksburg TAC, IAF, Tab 9 at 58, we find no evidence in the record that the appellant was aware of this requirement prior to February 2, 2015. Nor do we find that this requirement should have been obvious to the appellant, given that he was responsible for managing both TACs and they are within commuting distance of one another. In the absence of some sort of evidence that the appellant had previously been instructed to obtain permission before working at the Fredericksburg TAC, we find that the agency has failed to present substantial evidence that the appellant's actions on this day amounted to unacceptable performance.

¶20    Under example 6, the Territory Manager stated that, on March 10, 2015, the appellant demonstrated deficiency in Leadership and Human Capital Management when he worked from a "remote site" without her prior knowledge or approval. *Id*. at 55. On review, the appellant asserts that this "remote site" was the Fredericksburg TAC, and March 10, 2015 was the first time that the Territory Manager raised this concern with him. PFR File, Tab 1 at 9. However, we find substantial evidence that the appellant should have known, based on his interaction with the Territory Manager in connection with example 5, that she expected the appellant to inform her when he was working out of the Fredericksburg TAC. *Supra* ¶ 19; IAF, Tab 9 at 55. We therefore find that the agency has shown by substantial evidence that the appellant's failure to notify the Territory Manager of his work location on March 10, 2015, constituted unacceptable performance.

¶21     Under example 7, the Territory Manager stated that, on March 31, 2015, the appellant exhibited a deficiency in Program Management Responsibility when he attempted to improve wait time statistics by having his subordinates take customers out of order. IAF, Tab 9 at 55. She stated that only managers are allowed to search for and select customer tickets in this way, and when the appellant refused her counseling about this, she reset the workstations and changed the passwords to prevent it from happening again. *Id*. The Territory Manager's statements are corroborated by other evidence in the record. IAF, Tab 9 at 69-71. On petition for review, the appellant argues that there is no agency manual that prohibits this practice and that he should have been praised for his initiative rather than placed on a PIP because of it. PFR File, Tab 4 at 9. However, we find substantial evidence that the appellant knew or should have known that this practice was improper; although it might work to improve his TACs' statistics by reducing median wait times, it would also necessarily result in inordinately long wait times for some customers. Indeed, the Territory Manager stated in the appellant's April 23, 2015 midyear progress review that the agency's computer system showed that some of his customers were experiencing wait times in excess of 5 hours.[6] IAF, Tab 9 at 24, 26.

¶22     Under example 8, the Territory Manager stated that the appellant was exhibiting unacceptable performance in Program Management Responsibility by not having the two Senior ITSs under his supervision conduct non-evaluative reviews of junior-level ITSs. IAF, Tab 9 at 55. According to the Territory Manager, each Senior ITS is required to conduct two non-evaluative reviews every month, but the Senior ITSs under the appellant's supervision had never done so, even though they had both been in the job for more than 2 years. *Id*.

---

[6] Although not mentioned in the PIP notice, the record also contains substantial evidence that the appellant attempted to manipulate the wait time statistics by having certain customers wait without a ticket so their wait times would not be captured by the system. IAF, Tab 9 at 41, 63.

at 55, 68. On petition for review, the appellant argues that this requirement is not located in the agency's Internal Revenue Manual, and although nonevaluative reviews are permitted, they are not mandatory. PFR File, Tab 1 at 10-11. However, we find that the agency has provided substantial evidence of Field Assistance expectations under which such reviews are, in fact, required. IAF, Tab 9 at 26, 30.

¶23    Under example 9, the Territory Manager stated that, between August 2014 and February 2015, the appellant had failed to ensure that one of his subordinates had obtained a proper identification badge. IAF, Tab 9 at 56, 85. On petition for review, the appellant argues that he timely sent an email to the relevant Security Officer requesting that this employee be issued a badge, but the badge was never issued. PFR File, Tab 4 at 11. The appellant states that he did not become aware of the situation until January 2016, when he received an untimely email from the Territory Manager's office regarding this employee's travel request for the previous month. *Id.* We are not persuaded by the appellant's attempt to blame the Territory Manager for this state of affairs. Furthermore, although the Security Officer and the employee herself may be partly to blame, we find substantial evidence that the appellant also failed to carry out his responsibilities by following up to ensure that the credentialing he requested had been completed.

¶24    Under example 10, the Territory Manager stated that one of the appellant's subordinates engaged in travel card abuse, and on January 7, 2015, the appellant was presented with "overwhelming evidence" of this abuse, including the subordinate's admission of misconduct. IAF, Tab 9 at 56. She stated that she forwarded the appellant a disciplinary recommendation to sign and return, with any additional comments, but the appellant refused to do so. *Id.* According to the Territory Manager, this represented a failure in the Leadership and Human Capital Management element because the appellant failed to accept his managerial responsibilities and failed to follow her instructions on the matter. *Id.* at 88. On petition for review, the appellant alleges that the disciplinary

recommendation that the Territory Manager forwarded him was for a 3-day suspension, and that he refused to sign it because it contained factual inaccuracies about the investigation and should have been issued by the Territory Manager herself. PFR File, Tab 4 at 12-13. However, to the extent that this document contained factual inaccuracies, the appellant could have worked with the Territory Manager and Human Resources personnel to correct them, or he could have pointed them out in the additional comments that he was authorized to make. Furthermore, it does not appear to us that the appellant had a good faith belief that he was not authorized to sign the document, both because his Territory Manager gave him explicit authorization and because his duties and responsibilities specifically provide that he "[d]ecides and enforces minor disciplinary measures, such as warnings and reprimands, [and] recommends other action in more serious cases." IAF, Tab 9 at 54. We find substantial evidence that the acts described in example 10 represent unacceptable performance.

¶25 Under Example 11, the Territory Manager alleged that, on the afternoon of Friday, January 30, 2015, at approximately 4:00 p.m., she was alerted to "an incident" involving two of the appellant's subordinates. *Id*. at 56. Although she "immediately and repeatedly" attempted to contact the appellant by telephone, email, and Office Communications Server about the situation, she was unable to reach him until the following Monday. *Id*. According to the Territory Manager, this represented unacceptable performance in Leadership and Human Capital Management. *Id*. On petition for review, the appellant argues that he handled the situation appropriately. PFR File, Tab 4 at 13. He states that both he and the Territory Manager were alerted to the problem by the same email, and so he went to the parking garage at around 4:30 p.m. to ensure that both employees left for the day without incident. *Id*. When the appellant returned to his desk after 5:00 p.m. and saw the Territory Manager's messages, her Office Communications Server indicator light showed that she had already left for the day, so the appellant waited until Monday to follow up with her. *Id*. Even accepting the

appellant's explanation, we find substantial evidence that his failure to communicate with the Territory Manager in a timely manner represented unacceptable performance. The appellant knew as soon as he received the email in question that the Territory Manager had been alerted to this incident, so he should have notified her at that time that he was handling it, or failing that, he should have at least replied to her email or attempted to call her after he returned to his desk and before he left for the day.

¶26    Under example 12, the Territory Manager alleged that, on October 3, 2014, the appellant directed two Individual Taxpayer Assistance Specialists (ITASs) to do the work of an Initial Assistance Representative (IAR) until further notice. IAF, Tab 9 at 56. She stated that the appellant instituted this directive to avoid addressing the performance and conduct issues of the IAR and that he should not have assigned lower-level work to higher-level employees for an indefinite period of time. She therefore asked that the appellant rescind his directive.[7] *Id*. On petition for review, the appellant explains that this was a short-term solution to an interpersonal conflict that had erupted between the IAR and another employee and was intended to separate these two employees physically until they had both calmed down. PFR File, Tab 4 at 13-14. He states that he assigned one ITAS to this role because her computer access had been restricted pending investigation, and she was unable to perform the full range of her proper duties anyway. He assigned the second ITAS only to fill in for the first ITAS when she was on break or otherwise away from the desk. *Id*. at 14. Although we understand the appellant's rationale, we still find substantial evidence that his actions constituted unacceptable performance in the area of Program Management. Specifically, we agree with the Territory Manager that the appellant was attempting to avoid

_____

[7] According to the appellant, ITASs perform a technical role in addressing substantive tax issues, whereas IARs are clerical employees who manage the front desk of the TAC. PFR File, Tab 4 at 13.

taking disciplinary action against the IAR in question by hoping that his behavior would improve and shifting office resources in the meantime. IAF, Tab 9 at 56.

¶27     Under example 13, the Territory Manager alleged that, during an April 9, 2015 operational review of the Bailey's Crossroads TAC, she discovered that the appellant had not had a regular workgroup meeting with his subordinates for at least a month. *Id*. She stated, "I understand if a weekly meeting is cancelled due to unforeseen circumstances and even then a manager should prepare an email containing information sharing items, but going a month without communicating to your workgroup results in uninformed employees producing poor operational performance." *Id*. On petition for review, the appellant argues that he normally conducted regular group meetings but had not done so in the month preceding April 9, 2015, because it was tax season and everyone was very busy. PFR File, Tab 4 at 14. Nevertheless, the appellant did walk around to each employee, have brief discussions with them, and send informative emails during this time period. *Id*. We find that the agency has failed to provide substantial evidence that the appellant's failure to hold a group meeting between March 9 and April 9, 2015, constituted unsatisfactory performance. As an initial matter, there does not appear to be any evidence of a rule or policy that requires TACs to have weekly meetings for their employees. The appellant's Leadership and Human Capital Management performance standard requires that he "[p]romote[] open and honest exchange of information, taking employee perspective into account," but even the Territory Manager admitted that this can sometimes be accomplished through email or other means, especially when circumstances prevent a formal group meeting. IAF, Tab 9 at 21, 56. Her assertion that the appellant had "gon[e] a month without communicating to [his] workgroup" is not supported by the record. The appellant's failure to communicate to his workgroup through a formal meeting does not equate to a failure to communicate to his workgroup at all. Moreover, the agency does not contest the appellant's assertion that he

actually held regular workgroup meetings outside of the spring tax season. PFR File, Tab 4 at 14.

¶28    Regarding the performance counseling memoranda, the Territory Manager sent the appellant six of these between January and April 2015. IAF, Tab 9 at 68-69, 85-88. The subjects of these memoranda correspond to examples 5 and 7-11 of the PIP notice, discussed above. The appellant states on petition for review that, on April 8, 2015, he submitted a rebuttal to each memorandum, which he states is located at "Exhibit A." PFR File, Tab 4 at 18. We have carefully reviewed the extensive record in this appeal, and we have located two different documents labeled "Exhibit A," but neither of them is the rebuttal memorandum to which the appellant is referring, IAF, Tab 29 at 10-13, Tab 41 at 28-31. Nor have we otherwise been able to locate this memorandum in the record. In any event, for the reasons explained above, we find that, with the exception of examples 5 and 13, the agency has provided substantial evidence that the appellant exhibited performance deficiencies leading up to the PIP, as alleged in the PIP notice. Even if some of the details contained in the counseling memoranda are inaccurate, we still find, based on the record as a whole, that the agency proved the fourth element of its case by substantial evidence.

¶29    Regarding the fifth and final element of the agency's case in chief, the administrative judge found that the agency proved by substantial evidence that the PIP period provided the appellant a reasonable opportunity to demonstrate acceptable performance, but the appellant's performance during that period remained unacceptable. ID at 7-12. Specifically, she found that the appellant failed to achieve numerous PIP requirements, as set forth in the notice of proposed removal, despite being given a reasonable amount of time to do so and biweekly coaching sessions to assist him. IAF, Tab 8 at 159-67; ID at 10-12. The appellant disputes these findings on review.

¶30    Between December 11 and 17, 2015, the Bailey's Crossroads TAC moved to a new office in Vienna, Virginia. IAF, Tab 41 at 109, 124. The appellant argues

on review that this move caused a major disruption in operations and that it was unreasonable to expect him to fulfill the PIP expectations during that time. PFR File, Tab 4 at 35-36. In particular, he disputes charge 1, specification 2, charge 2, specifications 3 and 4, and charge 3, specification 2 of the proposed reduction in grade. *Id*. at 36; IAF, Tab 8 at 160, 163, 166. He characterizes these specifications as concerning failure to respond to one email within an hour, failure to respond to another email within 3 hours, failure to complete all monthly employee reviews for December, and "lost equipment" that was merely misplaced by the movers. PFR File, Tab 4 at 36. We agree with the appellant that the office move was an extenuating circumstance that might excuse some lapses in performance during the relevant time period. We find, however, that it does not entirely excuse these particular lapses. First, regarding the emails, the disruption surrounding the office move might explain the appellant's failure to respond promptly to the two "High Priority" emails, but it does not explain his failure to request extensions or his failure to give reasons for the late responses as charged. IAF, Tab 8 at 163. Likewise, although it might be understandable or even expected that some items will be misplaced during an office move, this does not excuse the appellant's failure to take appropriate steps to locate the equipment prior to ordering new equipment, as specified. *Id*. at 166. Finally, even if the office move might have interfered with the appellant's ability to submit quality reviews for his subordinates in December 2015, it appears that this was the appellant's second chance to do so–the first one being in May 2015, which was the first half of the PIP period before he went on medical leave. IAF, Tab 8 at 160, Tab 9 at 57. The December 2015 office move does not explain the appellant's failure to submit the quality reviews during the May 2015 time period.

¶31     Again, regarding charge 1, specification 3, the appellant asserts that the notice of proposed removal is inaccurate because he did submit the quality reviews as directed. PFR File, Tab 4 at 36. However, the only evidence in the

record regarding these reviews appears to be the Territory Manager's declaration stating that they were never submitted, and the appellant's admission during his response to the proposed reduction in grade that he did not complete them. IAF, Tab 8 at 11, Tab 40 at 61-62. We find that the agency has provided substantial evidence that the appellant did not complete this action item as directed.

¶32    The appellant also challenges charge 2, specification 1, which states that he failed to complete one of the PIP action items by not taking a particular training course as directed by the Territory Manager. PFR File, Tab 4 at 36; IAF, Tab 8 at 162, Tab 9 at 57. The appellant argues on review, as he did below, that he attempted to take the course, but it was not available, and the training officials did not offer him any alternatives when he brought this to their attention. PFR File, Tab 4 at IAF, Tab 8 at 25. However, the appellant admitted below that he failed to contact the Territory Manager about the matter so that she could locate an alternative course for him or otherwise provide him assistance in completing this task. IAF, Tab 8 at 25. The appellant's difficult working relationship with the Territory Manager does not excuse his failure to attempt to work with her in resolving this matter. We find that the agency has proven by substantial evidence that the appellant did not complete this PIP action item as directed.

¶33    The appellant also challenges charge 3, specification 4, which states that, in May 2015, the Territory Manager found a stale check at the Bailey's Crossroads TAC that had been mishandled. PFR File, Tab 4 at 36; IAF, Tab 8 at 165-66. The agency alleged that when the Territory Manager instructed the appellant to give one of his subordinates an evaluative review to provide guidance on processing stale checks, the appellant refused, challenging the Territory Manager's determination. IAF, Tab 8 at 166. On review, the appellant argues that the check was, in fact, processed, and that he had never been informed of any bright-line rule for when a check is considered stale. PFR File, Tab 4 at 36. We find, however, that the specification did not state that the check had not been processed–only that it had not been processed correctly. IAF, Tab 8 at 165-66.

We also find that the check at issue here was dated exactly 1 year before the date it was processed, and even in the absence of a bright-line rule for identifying stale checks, the appellant should have known that this particular check was at risk of not being honored by the bank. IAF, Tab 30 at 71, Tab 40 at 20. We note, however, that the record shows the appellant did not refuse to issue the evaluative review as alleged. IAF, Tab 8 at 60-61, Tab 9 at 64-65. We therefore find that the agency did not provide substantial evidence to support this portion of the specification. Nevertheless, the agency provided substantial evidence to show that the stale check was processed incorrectly and that the appellant failed to take initiative to address the matter, even after the Territory Manager brought it to his attention. IAF, Tab 40 at 45.

¶34 Finally, the appellant disputes charge 1, specification 5 and charge 2, specification 2.[8] PFR File, Tab 4 at 36; IAF, Tab 8 at 161-63. However, these matters pertain to incidents that occurred after the PIP period ended. IAF, Tab 8 at 161-63. We therefore find that they are immaterial to the central issue of whether the appellant demonstrated acceptable performance during the PIP period.

¶35 As a general matter, the appellant challenges the credibility of the Territory Manager's declaration. PFR File, Tab 4 at 15; IAF, Tab 40 at 56-74. Specifically, he argues that the Territory Manager's statement that his previous supervisor communicated some performance concerns to her is not believable in light of his prior performance accolades, and that this should cast doubt on the veracity of the remainder of the Territory Manager's declaration. PFR File, Tab 4 at 15. However, we do not find it inherently improbable that the appellant's former supervisor harbored some concerns about the appellant's performance, even if these did not figure prominently in the appellant's prior

---

[8] The appellant mistakenly refers to charge 2, specification 2 as charge 2, specification 1. PFR File, Tab 4 at 36.

performance evaluations. In any event, in a chapter 43 appeal, an agency is only required to present substantial evidence in support of its action; it is not required to present evidence which is more persuasive than that presented by the appellant. *Shuman v. Department of the Treasury*, 23 M.S.P.R. 620, 624 (1984).

¶36    The appellant also argues that the notice of proposed removal was based partly on performance issues that preceded the PIP. PFR File, Tab 4 at 18, 20. However, as long as the appellant failed to demonstrate acceptable performance during the PIP period, there is nothing to prevent the agency from relying on performance deficiencies that occurred at any time during the year preceding the notice of proposed removal. *See Brown v. Veterans Administration*, 44 M.S.P.R. 635, 640 (1990). For these reasons, we find that the appellant has provided no basis to disturb the administrative judge's finding that the agency proved by substantial evidence all the elements of its case as set forth in *Lee*, 2022 MSPB 11, ¶ 15. ID at 4-12.

The appellant has not proven his affirmative defenses of disability discrimination.

¶37    The appellant raised affirmative defenses of disability discrimination under both reasonable accommodation and status-based treatment theories. ID at 14-23. The administrative judge considered both of these affirmative defenses, but found that the appellant failed to prove them. *Id*. The appellant challenges the administrative judge's findings on review. PFR File, Tab 4 at 5-6, 15-17, 19-20.

¶38    To prove a disability discrimination claim based on failure to accommodate, the appellant must show that: (1) he is an individual with a disability, as defined by 29 C.F.R. § 1630.2(g); (2) he is a qualified individual with a disability, as defined by 29 C.F.R. § 1630.2(m); and (3) the agency failed to provide a reasonable accommodation. *Miller v. Department of the* Army, 121 M.S.P.R. 189, ¶ 13 (2014). In this case, the administrative judge found that the appellant is an individual with a disability, but that he is not a qualified individual with a disability, and in any event, the agency did not refuse him any reasonable accommodation. ID at 14-21.

¶39    On petition for review, the appellant argues that the Territory Manager ignored his request for reasonable accommodation, i.e., that he needed frequent bathroom breaks and an option to telework.  PFR File, Tab 4 at 20; IAF, Tab 41 at 35.  However, the record shows that the Territory Manager did not ignore the appellant's request for accommodation.  She did respond to it, even though she offered the appellant leave as needed in lieu of the telework he requested.  IAF, Tab 8 at 121-22, Tab 40 at 70-71; Tab 41 at 51.  An employee is not entitled to the accommodation of his choice, but is only entitled to a reasonable and effective accommodation.  *Miller*, 121 M.S.P.R. 189, ¶ 21.  The appellant has provided no basis to disturb the administrative judge's finding that the agency provided him reasonable accommodations for his disability.  ID at 20-21.  In any event, the appellant does not contest the administrative judge's finding that he was not a "qualified individual" with a disability, i.e., one who is able to perform the essential functions of the position he holds or desires with or without reasonable accommodation.  ID at 16-18; 42 U.S.C. § 12111(8) (defining the term "qualified individual").  We see no basis to disturb the administrative judge's finding on this issue, which is itself dispositive.  *See Haas v. Department of Transportation*, 2022 MSPB 36, ¶¶ 28-30.

¶40    To prove a status-based disability discrimination claim, the appellant must prove, at a minimum, that he is a qualified individual with a disability, and that his disability was a motivating factor in the challenged personnel action.  *See id.*; *Pridgen v. Office of Management and Budget*, 2022 MSPB 31, ¶¶ 21-22, 40.  In this case, the administrative judge found that the appellant provided insufficient evidence to show that his disability was a motivating factor in the agency's action.  ID at 21-23.

¶41    On petition for review, the appellant asserts several times that the Territory Manager knew of his disability, that she treated him more harshly that other non-disabled Supervisory ITASs, and that her actions were motivated by disability discrimination.  PFR File, Tab 4 at 5-6, 9, 14-17, 19-20.  We have

considered the appellant's arguments, but we find that they provide no basis to disturb the initial decision. The administrative judge found that, although the Territory Manager was aware of the appellant's disability, she had a legitimate reason for treating him differently than the other Supervisory ITASs because none of them were exhibiting the same performance issues as the appellant. ID at 22; IAF, Tab 40 at 73; *see Alford v. Department of Defense*, 118 M.S.P.R. 556, ¶ 10 n.6 (2012). The appellant's arguments on review are based on little more than the fact of his disability and the Territory Manager's knowledge of it. We find that this is insufficient to show that discrimination was a motivating factor in his reduction in grade, and that his arguments constitute mere disagreement with the initial decision. *See Weaver v. Department of the Navy*, 2 M.S.P.R. 129, 133-34 (1980). Moreover, as explained above, the appellant has not shown that he is a "qualified individual" with a disability. *Supra* ¶ 39. Therefore, even if his disability were a motivating factor in his removal, he would not be able to prove this affirmative defense. *See Haas*, 2022 MSPB 36, ¶¶ 28-30.

<u>The appellant has not proven his affirmative defense of retaliation for equal employment opportunity activity.</u>

¶42      It is a prohibited personnel practice to take a personnel action in retaliation for EEO activity. *See* 5 U.S.C. § 2302(b)(1), (b)(9)(A)(ii).[9] To prove an affirmative defense of retaliation for engaging in activity protected by Title VII, the appellant must show that retaliation was a motivating factor in the agency's

---

[9] During the pendency of this appeal, the National Defense Authorization Act for Fiscal Year 2018, Pub. L. No. 115-91, 131 Stat. 1283, was signed into law on December 12, 2017. It expanded the activities protected under 5 U.S.C. § 2302(b)(9)(C) to include cooperating or disclosing information to "any . . . component responsible for internal investigations or review." Pub. L. No. 115-91, § 1097(c)(1)(A), 131 Stat. 1283, 1618. We need not consider whether that expansion would affect the outcome of this appeal because all of the relevant events occurred prior to December 12, 2017. *Edwards v. Department of Labor*, 2022 MSPB 9, ¶¶ 29-34 (finding that the changes to section 2302(b)(9)(C) do not apply retroactively).

action.[10] *Id*., ¶ 49. If the appellant can carry this burden, the agency may limit relief by showing that it would have taken the same action notwithstanding the protected activity. *Id*., ¶¶ 49-51. In this case, the administrative judge found it undisputed that the appellant engaged in EEO activity, and that the Territory Manager knew about the activity. ID at 25. However, he found that the appellant's claim failed because neither the proposing official nor the deciding official was aware of his protected activity. *Id*. On petition for review, the appellant argues that the Territory Manager's actions were retaliatory because they intensified after he filed his first EEO complaint in May 2014. PFR File, Tab 4 at 17, 20. In the face of the agency's evidence regarding his performance issues, we find that the appellant's argument is insufficient to establish that his reduction in grade was retaliatory. Nevertheless, we disagree with the administrative judge's finding that:

> [T]he appellant's claim must fail because [the Territory Manager] did not propose the appellant's demotion, and was not the deciding official. [The Territory Manager] stated she had "no input" into the appellant's proposal letter, and there is no evidence to demonstrate that she had any influence in the final decision to demote the appellant.

ID at 25. Even assuming that the Territory Manager was not directly involved in drafting the proposal or decision letters and did not discuss this case directly with the proposing or deciding officials, we find that her actions are nevertheless

---

[10] After the initial decision was issued, the Board issued its decision in *Pridgen*, 2022 MSPB 31, ¶¶ 35, 44-47, adopting a "but-for" causation standard for claims of retaliation for activity protected under the Rehabilitation Act of 1973 (Rehabilitation Act). Both requesting a reasonable accommodation and opposing disability discrimination are activities protected by the Rehabilitation Act. *Id.*, ¶ 44. Although not entirely clear, the appellant's June 2014 informal EEO complaint may have raised an alleged denial of accommodation. IAF, Tab 29 at 6. To the extent it did, we find that the application of the higher "but-for" causation standard to the appellant's claim of retaliation for that complaint would not result in a different finding here. *See Pridgen*, 2022 MSPB 31, ¶ 48 (recognizing that "motivating factor" is a lower standard for causation than "but-for").

sufficient to show her involvement in the reduction-in-grade decision. She was the person who placed the appellant on a PIP, determined that he did not complete the PIP successfully, and initially recommended that he be removed from his position. IAF, Tab 9 at 52-58, Tab 30 at 364-67. We find that these actions were the proximate cause of the reduction-in-grade action, and that the Territory Manager's role in the decision-making process leading up to the adverse action could be enough to show that the adverse action itself was tainted by retaliatory animus. *See Naval Station Norfolk-Hearing 2 v. Department of the Navy*, 123 M.S.P.R. 144, ¶ 30 (2016).

¶43      Nevertheless, considering all of the relevant evidence together, we still agree with the administrative judge that the appellant's EEO activity was not a motivating factor in the agency's decision. *See Sabio v. Department of Veterans Affairs*, 124 M.S.P.R. 161, ¶ 36 (2017) (holding that the Board will consider all of the relevant evidence as a whole when determining whether an appellant has proven an affirmative defense under Title VII). We find that the Territory Manager was aware of the appellant's first two EEO complaints during the relevant time period.[11] IAF, Tab 7 at 29-30, Tab 30 at 369, Tab 40 at 71-72. We also find that, as the official accused of discrimination, she would have had some motive to retaliate against the appellant. *See Dorsey v. Department of the Air Force*, 78 M.S.P.R. 439, 450 (1998). However, neither of these complaints appears to have resulted in a finding of discrimination, and the Territory Manager does not seem to have faced any discipline or other adverse consequences as a result of these complaints, apart from having to take the time to respond to them. We therefore find that the Territory Manager's retaliatory motive was not particularly strong. *See Simien v. U.S. Postal Service*, 99 M.S.P.R. 237, ¶ 30

---

[11] The appellant filed his third EEO complaint against the Territory Manager on March 25, 2016, after her involvement in the performance-based action had ended. IAF, Tab 41 at 129.

(2005). In addition, the Territory Manager began expressing her concerns about the appellant's performance before his EEO activity began, and she expressly denied retaliating against the appellant for his EEO activity. IAF, Tab 40 at 73, 81. Considering on the one hand, the Territory Manager's motive to retaliate, and on the other hand, the substantial evidence that the agency presented of the appellant's performance deficiencies and the lack of any retaliatory motive by the proposing and deciding officials, we agree with the administrative judge that the appellant has not established that his EEO activity was a motivating factor in his reduction in grade and pay. ID at 25; *see Sabio*, 124 M.S.P.R. 161, ¶¶ 36-44.

¶44        Accordingly, we affirm the initial decision as modified by this Final Order.

## NOTICE OF APPEAL RIGHTS[12]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

---

[12] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) <u>Judicial review in general</u>**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be <u>received</u> by the court within **60 calendar days** of <u>the date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) <u>Judicial or EEOC review of cases involving a claim of discrimination</u>**. This option applies to you <u>only</u> if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—<u>including a disposition of your discrimination claims</u>—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** <u>after you receive</u> this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. ____ , 137 S. Ct. 1975 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** <u>after your representative</u> receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of <u>your discrimination claims only, excluding all other issues</u>. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** <u>after you receive</u> this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** <u>after your representative receives</u> this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**.  This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[13]  The court of appeals must receive your petition for

---

[13]  The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

review within **60 days** of the <u>date of issuance</u> of this decision. <u>5 U.S.C. § 7703</u>(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD: /s/ for

Jennifer Everling
Acting Clerk of the Board

Washington, D.C.